IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**PAUL M. SANDERS**,

Plaintiff,

v.

**LEGACY EMANUEL MEDICAL CENTER**, an Oregon corporation; **ALOYSIUS FOBI, M.D.**, an individual; **PETYA GUEORDJEVA, M.D.**, an individual; **ARMAN FAROGI, M.D.**, an individual; **SUMITRA CHANDRASEKARAN, M.D.**, an individual; **ROBERT VISSERS, M.D.**, an individual; **MARILYN REPLOGLE, M.D.**, an individual; **ELLEN DUPLAIN, M.D.**, an individual; **NIKOLAS JONES, M.D.**, an individual; **JONATHA KUKIER, M.D.**, an individual; **KATHERINE DEMPSTER, M.D.**, an individual; **FRANKLAND HEGGE, M.D.**, an individual; **SHIRLEY ROFFE, M.D.**, an individual; and **DOES 1-20 et al.**,

Defendants.

No. 3:14-cv-00690-PK

OPINION AND ORDER

**MOSMAN, M.**,

On August 18, 2014, Magistrate Judge Papak issued his Findings and Recommendation ("F&R") [44] in the above-captioned case, recommending that a judgment be entered dismissing Mr. Sanders's Motion for Default Judgment [32] and granting Defendants' Motion to Dismiss [28] therefore dismissing: (1) Defendants Dempster, Roffe, Gueordjeva, Chandrasekaran,

Replogle, Duplain, Kukier, Hegge, and Does 3-20 because they were not named in any claims; (2) Mr. Sanders's federal causes of action, with prejudice, for failure to state a claim, and (3) Mr. Sanders's state law claims, without prejudice, due to a lack of subject-matter jurisdiction.

On September 9, 2014, Mr. Sanders's filed objections to the F&R [47]. Mr. Sanders first objects to the dismissal of Defendants Gueordjeva, Chandrasekaran, Replogle, Duplain, and Kukier because they were the treating physicians in his trips to the hospital giving rise to his federal claims. Pl.'s Objections [47] at 10. Second, he objects to the dismissal of his Motion for Default Judgment by arguing that Judge Papak's recommendation fails to properly enforce the Federal Rules of Civil Procedure and therefore encourages "parlor tricks" and "fancy lawyerin[g]" *Id.* at 12. Finally, Mr. Sanders objects to Judge Papak's recommendation to grant Defendants' Motion to Dismiss because Mr. Sanders claims that Judge Papak incorrectly concluded that he did not and could not plead that he had an emergency medical condition as defined in 42 U.S.C. § 1395dd(e)(1). *Id.* at 13.

I find no merit in Mr. Sanders's objections and therefore adopt the reasoning and conclusions in Judge Papak's F&R [44] to the extent explained herein.

## LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

(9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

### I. Defendants Dempster, Roffe, Gueordjeva, Chandrasekaran, Replogle, Duplain, Kukier, Hegge, and Does 3-20

Mr. Sanders did not object to the dismissals of defendants Dempster, Roffe, Hegge or Does 3-20. I have reviewed the F&R [44] and I agree with Judge Papak's recommendation, and I ADOPT the F&R [44] as my own opinion with respect to these defendants. I therefore dismiss defendants Dempster, Roffe, Hegge or Does 3-20.

With respect to the remaining unnamed defendants, an action under the Emergency Medical Treatment and Active Labor Act ("EMTALA") may be brought only against hospitals, and not against individual physicians and therefore, any claims brought against these defendants must be pled under state law. *See Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995) ("[W]e affirm the district court's ruling that the EMTALA does not allow private suits against physicians.") Nowhere, however, in any of his state law claims does Mr. Sanders assert any claims against defendants Dempster, Roffe, Gueordjeva, Chandrasekaran, Replogle, Duplain, Kukier, Hegge, and Does 3-20. First Am. Compl. [7]. Judge Papak asked Mr. Sanders at oral argument if he intended to pursue any additional claims other than the 35 enumerated claims in the First Amended Complaint against the unnamed defendants. July 29 Tr. at 4:17–7:15. Mr. Sanders confirmed that he did not intend to assert any additional claims. *Id*. Judge Papak therefore dismissed defendants Dempster, Roffe, Gueordjeva, Chandrasekaran, Replogle, Duplain, Kukier, Hegge, and Does 3-20 because no claims for damages were brought against

them and Mr. Sanders confirmed that he did not intend to pursue any additional claims. F&R [44] at 19–20.

Mr. Sanders now wishes to take back his representation to the court. He argues that he did not understand that what he represented to the court would result in his claims against these defendants being dismissed. Pl.'s Objections [47] at 10. In his objections, Mr. Sanders argues that he would never waive his EMTALA or medical malpractice claims, and therefore he would never voluntarily waive any claims against these defendants because that would lead to dismissal of those claims.

First, Mr. Sanders need not fear because dismissal of these defendants individually will have no effect on Mr. Sanders's EMTALA and medical malpractice claims. The EMTALA claim can only be maintained against Legacy Emanuel Medical Center ("Legacy"), and the medical malpractice claims brought against Legacy for these defendants' action under a theory of respondeat superior do not depend on claims being brought against these defendants individually as well. Therefore dismissing these defendants will have no negative impact on the claims Mr. Sanders never intended to waive. Second, I have reviewed the transcript of the oral argument held on July 29, 2014 and I have determined that Judge Papak went to sufficient lengths to ensure that Mr. Sanders understood that he was waiving his claims against these defendants. If Mr. Sanders was confused about what he was agreeing to, he had every opportunity to ask Judge Papak to clarify this concession at oral argument. Mr. Sanders therefore knowingly and voluntarily waived any claims that he might have had against these defendants.

I am unpersuaded by any of the objections to this portion of the F&R raised by Mr. Sanders, and therefore adopt the F&R to the extent that it dismisses defendants Gueordjeva, Chandrasekaran, Replogle, Duplain, and Kukier.

## II. Mr. Sanders Motion for Default Judgment

Mr. Sanders next objects to Judge Papak's recommendation to dismiss his Motion for Default Judgment. Pl.'s Objections [47] at 11. Mr. Sanders argues that he is entitled to a default judgment because Defendants had indicated to him on a certificate of service on four different occasions that they had served process on him via both postal mail and by email when in fact they had only done so via postal mail. *Id*. at 12. Mr. Sanders does not argue that this had any material negative impact on him, simply that this was a violation of the Federal Rules of Civil Procedure, and therefore it warrants a punishment.

I agree with Judge Papak's statements at oral argument that this is a case of harmless error. July 29 Tr. at 17. I agree that service via postal mail was appropriate and sufficient to satisfy Defendants' service obligation, and therefore adopt the F&R with respect to the analysis on Mr. Sanders's Motion for Default Judgment and deny Mr. Sanders's motion. F&R [44] at 20.

## III. Legacy Defendants' Motion to Dismiss

### A. *Establishing an EMTALA Claim*

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*; see also Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

EMTALA requires that, upon request by any person requesting "examination or treatment for a medical condition" at the emergency department, "a hospital emergency department" must "provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). If a hospital "determines that the individual has an emergency medical condition" under EMTALA, the hospital must either provide "such further medical examination and such treatment as may be required to stabilize the medical condition" within the hospital or transfer the person to another facility where space and resources are available for such examination and treatment, so long as it is safe and appropriate to do so according to the metrics set forth at 42 U.S.C. § 1395dd(c). 42 U.S.C. § 1395dd(b)(l).

An emergency medical condition is defined in EMTALA as a condition manifesting itself through acute symptoms that in the absence of immediate medical attention could reasonably be expected to result in: (1) placing the health of the individual in serious jeopardy, (2) serious impairment to bodily functions, and (3) serious dysfunction of any bodily organ or part. 42 U.S.C. § 1395dd(e)(1).

EMTALA expressly provides individuals with a cause of action to seek redress for any personal harms suffered as a result of an EMTALA violation. "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of [EMTALA] may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A).

Interpreting EMTALA, the Ninth Circuit has held that;

> [A] medical screening examination is "appropriate" [for EMTALA purposes] if it is designed to identify *acute* and *severe* symptoms that alert the physician of the need for *immediate* medical attention to prevent serious bodily injury. The EMTALA does not require physicians to detect medical conditions that are *not* manifested by acute and severe symptoms, nor those that do not require immediate medical attention to prevent serious bodily injury. . . . [T]he test is whether the challenged procedure was identical to that provided similarly situated patients, as opposed to whether the procedure was adequate as judged by the medical profession.

*Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257–1258 (9th Cir. 1995) (emphasis in original). The Ninth Circuit has also held that a "hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency condition." *Jackson v E. Bay Hosp.*, 246 F.3d 1248, 1257 (2001) (quoting *Eberhardt*, 62 F.3d at 1259). In *Eberhadt*, the court held that there was no medical emergency requiring immediate treatment when there was no material deterioration in the patient's medical condition until thirty hours after the patient's discharge from the hospital. *Eberhardt*, 62 F.3d at 1257. The hospital in *Eberhardt* was therefore not liable under EMTALA for failure to screen or provide treatment to the patient because EMTALA liability cannot exist where there is no medical emergency. *Id.*

**B. *Mr. Sanders's EMTALA Claims***

Mr. Sanders's First Amended Complaint contains seven separate claims for violations of EMTALA. First Am. Compl. [7]. For five of these visits, Mr. Sanders alleges that he received insufficient screening, and for the other two of these visits (July 3, 2012 and August 12, 2012), he alleges that he received no screening at all. First Am. Compl. [7] at 32–43. Judge Papak concluded that Mr. Sanders had pled the screening requirement of EMTALA with sufficient facts at this stage to overcome a motion to dismiss. However, Judge Papak then determined that Mr. Sanders had not pled sufficient facts to establish that he was suffering from an emergency

medical condition, and therefore concluded that Mr. Sanders's EMTALA claims failed as a matter of law. F&R [44] at 28–29. Without an emergency medical condition, Mr. Sanders had not suffered any damages directly from the alleged EMTALA violations.

With regards to the screening requirement of EMTALA, I decline to adopt Judge Papak's conclusion that Mr. Sanders pled sufficient facts to support this part of his EMTALA claims. First, Mr. Sanders first amended complaint contradicts the allegation that he received no screening at all on July 3, 2012 and August 12, 2012. On July 3, 2012, his complaint states that he received an ultrasound, and on August 12, 2012, it says he received a glucose test when he presented himself at the emergency department. First Am. Compl. [7] at 39–42. I agree with Defendant that these tests would only have been performed if they were part of a medical screening process. Def.'s Response [48] at 13–14. Second, I find that nowhere in his actual complaint, or the potential amended complaint contained in his objections to the F&R, does Mr. Sanders ever allege facts to support the conclusion that he received inadequate or disparate screening. First Am. Compl. [7]; Pl.'s Objections [47] at 17–34. Mr. Sanders's complaints are merely filled with conclusory statements that his screening was inadequate and failed to diagnose his chromobacterium infection. The Ninth Circuit held in *Jackson* that, "[f]aulty screening, . . . as opposed to disparate screening or no screening at all, does not contravene the statute." *Jackson*, 246 F.3d at 1255 (quoting *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 879 (4th Cir. 1992)). Merely stating that his screenings were inadequate to diagnose his condition is not enough; Mr. Sanders must also plead facts to suggest that his screening was somehow different from the screening that a similarly situated individual with insurance would have received if presented at Defendants' emergency department.

Judge Papak cited paragraph 203 of the first amended complaint to support this conclusion that Mr. Sanders had pled sufficient facts to conclude that he had received different medical screening than would have been provided to a hypothetical patient with his same symptoms and medical history but with preferable insurance. F&R [44] at 26. I do not believe that paragraph 203 is sufficient to pass the pleading requirements set forth in *Twombly* and *Iqbal*. Paragraph 203 states that:

> LEMC had to make adjustments to its retail Medical costs to Medicare for the sum of $72,719.45 from the Dates of Service from August 28, 2011 to August 12, 2012, which due to their pecuniary interests motivated LEMC to discriminate against Medicare patients such as Plaintiff because of a desire to protect their profit margins and not to have to adjust LEMC's retail medical costs for Medicare, showing that these policies and practices of LEMC to deny Medicare patients such as Plaintiff appropriate medical screening and treatment were based on those monetary interests.

First Am. Compl. [7] at 43. This paragraph merely states a motivation why Defendants may have wanted to have disparate screening practices for insured versus uninsured patients, but it does nothing to show that Defendants in fact had in place or executed any such policies. The fact that Mr. Sanders failed to plead any facts to show that he received no screening or that he received disparate screening is fatal to his EMTALA claims. Therefore, I find that it is appropriate to dismiss each of Mr. Sanders's EMTALA claims for failure to plead the necessary fact that the screenings he received were disparate from a similarly situated insured individual. Given that Mr. Sanders's proposed second amended complaint included in his objections to the F&R also fails to properly plead the screening requirement of EMTALA, I find that it is unlikely that any factually accurate amendment could cure this defect and therefore dismiss his EMTALA claims with prejudice.

As an additional ground for dismissal with prejudice, I also agree with Judge Papak's conclusion that Mr. Sanders failed to allege sufficient facts to support the conclusion that his

overt symptoms of hyperammonemia or the chromobacterium infection that caused those symptoms were so severe that in the absence of immediate medical attention it could reasonably have been expected that Mr. Sanders would suffer the types of harm outlined in EMTALA. F&R [44] at 27; 42 U.S.C. § 1395dd(e)(1). By his own admission at oral argument, hyperammonemia is not an emergency medical condition but rather only an indication of a possible medical emergency. July 29 TR. at 24:17–24. In addition, the fact that even today Mr. Sanders cannot point to any harm he suffered as a result of not receiving treatment for his hyperammonemia, but rather can only state that he "more likely than not sustained permanent brain damage," is evidence that his condition was not sufficiently serious to constitute an "emergency medical condition" as defined in EMTALA. Pl.'s Objections [47] at 28. I therefore find that because Mr. Sanders has failed to plead sufficient facts to support a conclusion that he suffered from an emergency medical condition at the relevant visits to Defendants' emergency department, no EMTALA liability can be attached to Defendants' actions. *Eberhardt*, 62 F.3d at 1257; *see also Jackson*, 246 F.3d at 1257. I further agree with Judge Papak that these claims should be dismissed with prejudice because no factually accurate amendment could modify my decision to dismiss these claims given Mr. Sanders admission that hyperammonemia is not an emergency medical condition.

## IV. **Mr. Sanders Remaining State Law Claims**

Mr. Sanders does not include any specific objections in his objections to the F&R with respect to Judge Papak's decision to dismiss the remaining state law claims due to a lack of subject matter jurisdiction. Pl.'s Objections [47]. I have reviewed Judge Papak's analysis and conclusion regarding these claims, and I adopt this portion of the F&R in full as my opinion regarding these claims. F&R [44] at 29–30. Given the dismissal of Mr. Sanders's federal claims

at this early stage in these proceedings, it would be inappropriate to exercise supplemental jurisdiction over Mr. Sanders's claims based entirely on state law.

Mr. Sanders mistakenly states that his ability to pursue his state medical malpractice and negligence claims depends on his EMTALA claims being allowed to go forward. This is not so. As Judge Papak stated in his F&R, Mr. Sanders is free to re-file these state law claims in state court. F&R [44] at 30 n.5. This opinion and order should not be construed as implying any opinion on the validity of Mr. Sanders's state law claims.

**CONCLUSION**

For the foregoing reasons, I agree that Mr. Sanders's EMTALA claims should be dismissed with prejudice, and that his state law claims should be dismissed without prejudice. Mr. Sanders is free to pursue his state law claims in a proper forum—i.e. state court.

IT IS SO ORDERED.

DATED this 16 day of October, 2014.

/s/Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge